150 N.J. Super. 255 (1976)
375 A.2d 664
VERNA MAY PALKO, PLAINTIFF-APPELLANT,
v.
DANIEL PALKO, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 17, 1975.
Decided March 2, 1976.
*256 Before Judges FRITZ, SEIDMAN and MILMED.
Mr. Frederic J. Rossi argued the cause for appellant (Messrs. Wegner & Wegner, attorneys).
Mr. Walter R. Dewey argued the cause for respondent.
Mr. David J. Goldberg argued the cause for intervenor Linda Palko, an infant (Mr. George Warren, guardian ad litem).
PER CURIAM.
In this matrimonial action plaintiff wife sought, by motion dated July 17, 1974 and filed July 22, 1974, to reopen a final judgment entered May 16, 1972 and to set aside so much of that judgment as incorporated a separation agreement dated February 14, 1972. While the motion sought much more, including "equitable distribution," the only ground asserted on this appeal is a charge of error on the part of the trial judge in refusing this relief in view of plaintiff's allegations that her husband "intentionally and wilfully withheld material information as to the value *257 of his holding during negotiations of the said property settlement agreement." It is to be observed that defendant died on June 18, 1973 and his will was admitted to probate on July 5, 1973.
While the procedure below, lacking an evidential hearing and ending in a determination in which the judge's findings had to be elicited by inference from his colloquy with counsel, left much to be desired, we are satisfied, as was the trial judge, that plaintiff set forth no substantial circumstances justifying the reopening of this judgment.
Moreover, it is noteworthy that the motion to reopen was not made for more than a year after probate of defendant's will and some 26 months after entry of the judgment sought to be set aside. We believe that nothing appears to invoke the relief available in R. 4:50, either by way of the specifics of R. 4:50-1(a), (b) or (c) (outlawed in this case by R. 4:50-2), or by the generality of the "other reason" provision in (f). See Doyle v. Chase Manhattan Bank, 80 N.J. Super. 105, 125 (App. Div. 1963), certif. den. 40 N.J. 508 (1963).
We observe that plaintiff has enjoyed the advantage of defendant's fully executed covenant, incorporated in the judgment and now beyond modification, to leave unchanged a will executed prior to their agreement. In less compelling circumstances than these we have formulated and honored the "important policy that litigation must have an end." Hartford Ins. Co. v. Allstate Ins. Co., 68 N.J. 430, 434 (1975).
The matter of relief from a judgment or order under our rules is one addressed to the sound discretion of the trial judge, whose decision will be upheld absent an abuse of that discretion. Greenberg v. Owens, 31 N.J. 402, 405 (1960). In the circumstances here present, we are unwilling to characterize the determination below as an abuse of discretion.
Affirmed.
SEIDMAN, J.A.D. (dissenting).
I disagree with the conclusion reached by my colleagues. The issue here, as I perceive it, is not whether plaintiff set forth "substantial circumstances *258 justifying the reopening of the judgment." It is whether, on the record before him, the trial judge should have set the matter down for a plenary hearing and taken oral testimony. Cf. Hallberg v. Hallberg, 113 N.J. Super. 205, 207 (App. Div. 1971). I think such hearing should have been held, followed by requisite findings of fact, and leading to a determination of whether the motion should be granted. I would therefore reverse and remand.
My colleagues acknowledge that "the procedure below, lacking an evidential hearing and ending in a determination in which the judge's findings had to be elicited by inference from his colloquy with counsel, left much to be desired * * *." I thoroughly agree with this appraisal. But their affirmance of the order dismissing the motion reflects a misconception of the real issue in this case.
Verna May Palko was married to Daniel Palko on April 19, 1952. Three children, two of whom are now adults, were born of the marriage. The parties were divorced by judgment entered May 16, 1972. Annexed to the judgment was a detailed settlement agreement which the trial judge found "wholly suitable and adequate in Plaintiff's favor and in favor of the infant children born of the marriage," and which he "approved, sanctioned and allowed as a settlement in gross of Plaintiff's right to alimony present and future."
The agreement, among other things not pertinent here, (1) divided certain household goods between the parties, (2) required the husband to purchase the wife's one-half equity in the marital domicile, based upon an agreed valuation of $28,000; (3) obligated the husband not to change his will, a copy of which was annexed, in which the two younger children were the primary beneficiaries, and (4) provided for the support of the three children, until emancipation, in weekly amounts totalling $70.
On June 18, 1973 Daniel Palko died testate. His will, naming his brother as executor, was admitted to probate on July 5, 1973. Plaintiff's motion, filed July 22, 1974, *259 sought (1) to reopen the divorce judgment and set aside the portion dealing with the separation agreement, (2) an accounting of the estate, (3) equitable distribution, (4) an increase in support for the remaining infant child, (5) counsel fees and costs, and (6) such further relief as the court might deem equitable and just.
In her supporting affidavit Mrs. Palko alleged that after the death of her former husband, she was "astounded to learn he left a personal estate in excess of $175,000"; that during their marriage they led a frugal life and her husband "never divulged his salary, but always led me to believe we were just making it financially"; that at the time of the divorce he was unemployed because of a coronary attack and was collecting disability benefits, and for these reasons she agreed not to accept support; that "it appears now that the defendant maintained accounts in ten to fifteen different banks and had stocks"; that all during the pretrial negotiations and conferences she relied upon the representations which defendant made as to poverty, and had no reason to doubt them because of the way they had lived during the marriage; that she felt she "was totally defrauded by the defendant and tricked into submission." She also claimed that she was unable to support her daughter on the weekly amount she received.
The attorney who represented Mrs. Palko in the divorce proceedings averred in his affidavit that the agreement and the financial provisions therein
* * * were predicated upon representations made to me by Mr. Giardiello [Mr. Palko's attorney] as to Defendant's financial status and prospects, among which were Defendant's heart condition which allegedly prohibited him from seeking further employment on a full- or part-time basis; income consisting solely of interest on a bank account of approximately $20,000.00, dividends from a small stock portfolio and permanent disability collected on account of his heart condition.
The attorney stated further that these facts were discussed at length with his client, who "conceded these statements *260 to be true to the best of her knowledge and information." He said that information "which has subsequently come to my attention as recently as three weeks ago relative to the financial condition of Mr. Palko and discovered as a result of probate proceedings were apparently not disclosed during the divorce proceedings either to Mrs. Palko or to me."
No answering affidavits were submitted by or on behalf of decedent's personal representative, who, I note parenthetically, should have been substituted as the party defendant in the cause.
During a hearing consisting solely of colloquy with counsel, the trial judge expressed his disbelief of plaintiff's allegations. He observed that she "had the right to become involved with the appropriate discovery," and had plenty of time and legal advice; that she had lived with the man for over 20 years and had signed joint tax returns (the latter comment unsupported by anything in the record), and that "[s]he is not an idiot" and had "a pretty fair idea of what the man was doing." The judge brushed aside counsel's argument that decedent had a duty of full disclosure and that it would be unconscionable to permit the agreement to stand. He said that he saw "no basis on which anybody could expect this Court to vacate their judgment and nullify the agreement with the objective of now considering equitable distribution." He concluded that there was nothing in the affidavits to indicate any misrepresentation.
There is no doubt whatever in my mind that the trial judge's comments were wide of the mark, considering the uncontradicted affidavits. The summary manner in which he disposed of the matter overlooked the fact that the averments in the affidavits, if true, created a genuine and substantial issue which might well have warranted the intervention of the court, in the absence of other countervailing reasons. The issue raised was whether there was an undue concealment by decedent of a material fact to the prejudice of his wife, which he was bound in conscience and duty to *261 disclose and in respect to which he could not innocently be silent; and, if so, whether this constituted equitable fraud in connection with the negotiated property settlement sufficient to entitle plaintiff to relief. See Nicholson v. Janeway, 16 N.J. Eq. 285, 287 (Ch. 1863); Hansen v. Janitschek, 57 N.J. Super. 418, 422 (App. Div. 1959). The resolution of that issue, in my view, required a plenary hearing in the circumstances of this case.
I do not say that plaintiff will or must prevail at such hearing. I am fully aware of the obstacles in her path, not the least of which is the length of time that had elapsed since the entry of the judgment. My colleagues properly point to the restrictive provisions of R. 4:50-1, but I am not persuaded that they are applicable here, especially to the extent that the relief sought is from the negotiated property settlement agreement, rather than the judgment itself, a significant distinction which seems to have escaped the attention of my colleagues. In any case, "the very essence of [subparagraph (f) of R. 4:50-1] is its capacity for relief in exceptional situations. And in such exceptional cases its boundaries are as expansive as the need to achieve equity and justice." Court Invest. Co. v. Perillo, 48 N.J. 334, 341 (1966).
While my colleagues correctly point out that decedent's agreement to leave unchanged his will executed prior thereto was carried out, I fail to see what particular personal advantage "plaintiff has enjoyed" therefrom, since no provision was made for her therein, although, quite understandably, the children were the principal beneficiaries.
I thoroughly agree that relief from a judgment or order is a matter addressed to the sound discretion of the trial judge, whose decision should not be disturbed except for an abuse of that discretion. But, as I have emphasized, my concern here is not with the merits of plaintiff's assertions; rather, it is that she be given a fair opportunity to establish by competent and credible evidence the existence of a sufficient basis for the exercise by the trial judge of his *262 discretion. After all, plaintiff was married to decedent for 20 years. She bore and reared their three children. Her life was not one of luxury. She received very little recompense for her labors by virtue of the property settlement agreement. I venture to suggest that a modicum of compassion in this case will not cause the heavens to fall.