268 N.J. Super. 7 (1993)
632 A.2d 830
WERNER VON PEIN, JR., PLAINTIFF-RESPONDENT,
v.
ADRIANA VON PEIN, DEFENDANT-APPELLANT. ADRIANA VON PEIN, PLAINTIFF-APPELLANT,
v.
ALTHEA A. PITEO AND WERNER VON PEIN, JR., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 28, 1993.
Decided October 19, 1993.
*9 Before Judges STERN, KEEFE and BILDER.
Cletus P. Lyman, admitted pro hac vice, argued the cause for appellant (Herbert F. Savoye, Jr., and Mr. Lyman, on the brief).
Werner Von Pein, respondent, filed a pro se brief.
No brief filed on behalf of respondent Althea A. Piteo.
The opinion of the court was delivered by BILDER, J.A.D. (retired and temporarily assigned on recall).
This is a divorce matter which has as an important part of its background a finding in 1992 by a Family Court Judge of what he characterized as "outright fraud" on the part of the former husband, a fraud which produced an unreasonable alimony award at the time of the 1986 divorce judgment. The record persuades us that this fraud also produced an unjust and inequitable distribution of the marital assets.
The details of the fraud which consisted of material misrepresentations of existing facts with regard to both the husband's assets and income for the purpose of evading his legal obligations to his wife and avoiding a fair resolution of the matrimonial financial issues need not be recited at length. Suffice it to note that the fifth judge to hear this case, Judge Hamer, concluded that plaintiff Werner Von Pein Jr. had been deceitful to the point of fraud, had been obstructionist with respect to discovery, and had engaged in a pattern of hiding assets, all to the end that he might evade his legal obligations to his former wife, defendant Adriana Von Pein, and avoid a fair resolution of the matrimonial financial issues. The fifth judge found it was plaintiff's purpose to corrupt and undermine the judicial process. In his order of June 18, 1992, the fifth judge said:

*10 [P]laintiff Werner Von Pein, Jr. is found to have defrauded the court in the trial of this action by testifying he was unemployed and by misrepresenting his assets and income in testimony and certifications filed with the court;
The dimensions of the fraud may be understood by noting that the trial judge found that when the final hearing was had and the divorce judgment entered, plaintiff was protesting a lack of employment or income, when in truth his salary alone, not counting income available from hidden Merrill Lynch investment accounts, was $160,000 a year. The hidden amounts were so large as to cause the trial judge to increase the originally ordered $14,400 a year alimony to $48,000 a year, to fix arrearages at $259,600 (plus interest of $69,902.67), and to award the former wife legal fees of $200,000. This resulted in a judgment against plaintiff of some $529,502.67, from which plaintiff has not appealed. We are satisfied that the trial judge's findings with respect to plaintiff's outrageous, corrupt and fraudulent conduct are fully supported by the record. See Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974).

I.
The parties were divorced on January 16, 1986 following a 21 year marriage. They had no children.
At the time of the final divorce hearing the court found the parties had the following assets subject to equitable distribution: a residence in Philadelphia, Pennsylvania valued at $475,000 but subject to a $200,000 mortgage and having contents valued at $250,000; a residence in Saddle River, New Jersey valued at $328,000 but subject to mortgages totaling $167,000 and having contents valued at $23,750; a house in Cologne, Germany in foreclosure and of doubtful value; a 1982 Oldsmobile valued at $5000; furs and jewelry as to which no value was attributed; $26,864.83 representing the proceeds from the sale of a Chicago house; 469.192 shares of Nabisco stock valued at $24,750; a Nabisco performance share plan valued at $49,640; $20,564 representing a Nabisco 1984 incentive award received by plaintiff and not shown to have been used for joint marital obligations; a U.S. *11 Savings Bond valued at $1200; a prospective Federal Tax refund of $6000; and IRAs belonging to each of the parties. The court found the total available for equitable distribution to be $843,769 and divided the assets equally. Almost 75% of this consisted of the two residences and their furnishings, therefore when defendant was awarded the Philadelphia home, she not only received no liquid assets but because its value including its contents exceeded half of what the court found to be the total matrimonial assets, defendant was required to surrender some $118,000 of the furnishings to her former husband. Because it found the plaintiff to be unemployed and receiving unemployment compensation, the court awarded defendant monthly alimony of $1200.
As already noted, in 1992 another trial judge found that at the time of the final divorce hearing plaintiff was in fact employed and receiving substantial six-figure compensation and that he had substantial assets concealed in Merrill Lynch security accounts. In his oral opinion of December 12, 1985 the then trial judge noted that a Merrill Lynch security account which had been in the name of the parties had been terminated about March 22, 1983 and that "as to funds worked through Von Pein Associates account by Ms. Piteo (plaintiff's present wife), [the divorce] court finds no wrongdoing and finds that no funds in said account were or are subject to equitable distribution." The finding was of course totally wrong; the error was entirely the result of plaintiff's purposeful fraudulent conduct (in which Piteo fully participated). The evidence makes clear that the proceeds of these hidden matrimonial assets may well be traceable into a house in Wilton, Connecticut in which plaintiff and Piteo-Von Pein now reside, purchased for $545,000 and alleged to be now worth close to a million dollars.

II.
The history of the litigation subsequent to the final order of divorce is convoluted, encompassing, insofar as important to this appeal, efforts by defendant to reopen the order of equitable distribution; to assert in a separate suit, later consolidated with *12 the matrimonial action, an equitable interest in the Wilton, Connecticut residence; to reopen the original alimony order and obtain a larger award (her sole total success); to obtain an award of legal fees for the efforts required to uncover the truth and obtain justice with respect to support and distribution; and to seek a court ordered contempt proceeding against plaintiff for his contumacious conduct. The matter was made more difficult and complex by the fact that changes in judicial assignments resulted in consideration of defendant's contentions by five different judges. The original trial judge, who was the victim of plaintiff's fraudulent behavior, never heard the matter again. A new judge heard the matter in 1988 when defendant first sought to reopen the equitable distribution. Because defendant's proofs were limited at that point to post-divorce events, the second judge denied the relief[1] but made a number of rulings which aided her in her efforts to pierce the fraudulent conspiracy. In 1989 the case was assigned to a third judge who denied defendant's motion to refer the matter to the prosecutor for a contempt prosecution. This is one of the orders appealed from. In 1990 the matter was assigned to yet a fourth judge who consolidated the Connecticut residence suit with the matrimonial action but then later denied defendant's application to reopen the equitable distribution and dismissed the Connecticut residence suit on grounds of forum non conveniens. Both of these 1990 orders, as well as a 1992 order by the same judge denying defendant's motion for reconsideration, are subject matters of this appeal. Finally the matter was assigned to a fifth judge who, following nine days of plenary hearings in 1992, made the findings with respect to plaintiff's fraudulent conduct (with the active participation of his present wife, Piteo-Von Pein), reopened and increased the alimony award, made the award of legal fees, and entered the half million dollar judgment against plaintiff. This last judge also denied defendant's renewed motion to reopen the equitable distribution, expressing the view that defendant was probably entitled to the relief but that this judge was bound by *13 the earlier ruling of the fourth judge. This denial of the motion to reopen the equitable distribution as well as an alleged inadequacy in the award of legal fees for the successful efforts of her counsel to penetrate the conspiracy of her husband and Piteo-Von Pein are also the subject matters of this appeal.

III.

(a) Criminal contempt proceedings.

In 1990 the third judge denied defendant's motion to refer her request for a finding of criminal contempt to the Bergen County Prosecutor or other designated attorney. See R. 1:10-2 and R. 1:10-4. In his order of January 5, 1990, the third judge said: "If perjury was committed at trial, or thereafter, either party may file a complaint with the appropriate law enforcement agency."
The use by a court of its contempt authority is a particularly sensitive discretionary matter. In appealing the denial of her motion to have such proceedings instituted defendant essentially claims an abuse of discretion. She seems to understand this because in her brief she does not deal with the question of discretion but relies on the practical considerations which impel her desire for such a prosecution.
Adriana is severely handicapped in recovering her alimony award if the court will not maintain the integrity of its own proceedings where necessary through criminal sanctions. Werner is able to change employment frequently and to conceal his assets. Court procedure is time-consuming. By the time Adriana discovers Werner's sources of income, they are no longer current, and she cannot execute upon them.
We are satisfied that the third trial judge did not abuse his discretion by refusing to institute criminal contempt proceedings. As he noted, if defendant wishes to bring plaintiff's criminal conduct to the attention of law-enforcement authorities, she does not need the aid of the court to do so.
In affirming the third judge's action in refusing to institute criminal contempt proceedings we take no position as to whether *14 this question should be examined sua sponte by the fifth trial judge on remand. Nor is that judge precluded from referring the matter to the Prosecutor for investigation. We recognize that when the matter was originally considered the true dimensions of plaintiff's outrageous, corrupt and fraudulent conduct had not yet been fully discovered.

(b) Reopening the equitable distribution.

Defendant appeals from three orders denying her motions to reopen the equitable distribution: the fourth judge's order of December 19, 1990 denying her application to reopen the issues of equitable distribution because it was barred by Rule 4:50; the same judge's subsequent order of June 16, 1992 denying reconsideration of the matter, finding "that the reopening of equitable distribution under the circumstances presented here is governed by Rule 4:50-2"; and the fifth judge's oral decision of March 27, 1992 denying defendant's application before him to reopen the issues of equitable distribution on the explicit ground that he was bound by the decision of the fourth judge, although expressing the view that it was error to deny her application without a hearing to determine the facts. See Palko v. Palko, 73 N.J. 395, 397-398, 375 A.2d 625 (1977); Palko v. Palko, 150 N.J. Super. 255, 258, 375 A.2d 664 (App.Div. 1976) (dissent adopted by the Supreme Court).
On appeal defendant forcefully argues that her application is not controlled by R. 4:50-2 but rather by R. 4:50-3 and that the proofs offered at the 1992 plenary hearing and the fifth trial judge's findings require that the issues of equitable distribution be reopened. We agree.
R. 4:50, set forth in its entirety for convenience, reads as follows:
4:50-1. Grounds of Motion
On motion, with briefs, and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under R. 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic), *15 misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.
4:50-2. Time of Motion
The motion shall be made within a reasonable time, and for reasons (a), (b) and (c) of R. 4:50-1 not more than one year after the judgment, order or proceeding was entered or taken.
4:50-3. Effect of motion
A motion under R. 4:50 does not suspend the operation of any judgment, order or proceeding or affect the finality of a final judgment, nor does this rule limit the power of a court to set aside a judgment, order or proceeding for fraud upon the court or to entertain an independent action to relieve a party from a judgment, order or proceeding.
In Shammas v. Shammas, 9 N.J. 321, 88 A.2d 204 (1952), Justice Brennan, with elegant simplicity, explained the rules regarding relief from judgment and their operation when perjured testimony, whether or not accompanied by or concealed by other and collateral acts of fraud, are the ground for relief as a fraud upon the court. Id. at 327-330, 88 A.2d 204.
[Rule 3:60-2 (the predecessor to our present Rule 4:50)] simplifies the procedure and permits the exercise of the power to open a final judgment * * * for fraud upon the court, without limitation as to time. [Id. at 327, 88 A.2d 204] [Citations omitted.]
* * * * * * * *
Equitable principles are the guide in administering relief to determine whether in the particular circumstances justice and equity require that relief be granted or denied.
Perjurious testimony alone and not accompanied or concealed by other and collateral acts of fraud may be a ground for relief as a fraud upon the court in a proper case. [Id. at 328, 88 A.2d 204] [Citations omitted.]
* * * * * * * *
[The court rejected a more limited rule that would limit relief for a fraud upon the court to "frauds, extrinsic or collateral, to the matter tried by the court"] We prefer to follow the equity of the matter and to take away an unjust judgment obtained by vital perjury when the injustice and inequity of allowing it to stand are made evident. [Id. at 330, 88 A.2d 204].
In comparison with the matter before Justice Brennan, we have an a fortiori case. The fifth trial judge found not only perjured *16 testimony on the part of plaintiff and his now present wife Piteo-Von Pein but numerous acts in furtherance of their conspiracy to hide assets and deprive defendant and the court of knowledge of the true facts and to deprive defendant of property which the law and common notions of fairness and justice entitled her to. The unjust equitable distribution judgment obtained by the fraudulent conduct demands a reopening of the distribution; the injustice and inequity of allowing the 1986 equitable distribution judgment to stand is evident. Because of Piteo-Von Pein's active participation in the conspiracy, we do not confront the problem of the effect of our ruling on an innocent third party. See Shammas, supra, at 333-334, 88 A.2d 204.
Although we are satisfied that the fifth trial judge's findings, which, as we have noted, are fully supported by the record, require that the equitable distribution judgment be reopened, we recognize that the fifth trial judge removed that issue on the last day of trial and that there are suggestions in the transcript that more proofs relating to the marital estate subject to equitable distribution may exist. On remand the matter should again be heard by the fifth trial judge[2] who may conclude that the present record is sufficient to make the proper equitable distribution rulings or may find it useful to order additional plenary hearings.
While not necessary to the opinion, we deem it useful to note our disagreement with the conclusion of the fourth trial judge in his letter opinion of November 20, 1990 that "the `newly-discovered evidence' could have been discovered at the time of the old litigation if discovery had been pursued diligently," a finding reiterated in his oral opinion of February 14, 1992[3] and preserved in his June 16, 1992 denial of the motion for reconsideration. Not *17 only is the conclusion not supported by the record, see Rova Farms Resort v. Investors Ins. Co., supra, but in the face of such a record of purposeful fraud, deceit and concealment, defendant's failure to discover the true facts cannot be characterized as neglect, and as a matter of policy, a court should be particularly cautious about making subjective judgments which aid the conspirators in giving effect to their fraud and as a practical matter ratify the fraud. See Restatement of Judgments, Section 121, comment a (1942).

(c) Dismissal of Von Pein v. Piteo.

On July 1, 1990 defendant instituted a separate action against her former husband and his new wife, Piteo-Von Pein, in which she alleged that by the use of fraudulently diverted marital assets on September 12, 1985, some four months before the final divorce decree, her former husband and Piteo had purchased the Wilton, Connecticut residence in the name of Althea Piteo Von Pein and that on January 17, 1986, the day after the final decree, the property had been transferred into the name of Althea A. Piteo. In connection with the claimed diversion of marital assets, the complaint alleged some 19 specific transactions with respect to secret Merrill Lynch accounts, alleged some 8 specific transactions with respect to a secret Chemical Bank money market account, and set forth a road map claiming to trace the marital assets into the $545,000 purchase of the Connecticut property. In that suit she sought to impress a trust on the property and to prevent any further conveyances or encumbrances. On August 20, 1990 the fourth judge consolidated this action with the matrimonial action.
On September 28, 1990 Von Pein and Piteo-Von Pein moved to vacate the order of consolidation and to dismiss the new complaint. Following consideration of the papers filed by the parties, on December 20, 1990 the fourth trial judge denied the consolidation and dismissed the new complaint. In the order he specifically found that New Jersey was a forum non conveniens.
*18 In the previously discussed letter opinion of November 20, 1990, the opinion upon which the December 20, 1990 order was based, the fourth trial judge said:
[I] find Adriana Von Pein's complaint and application to consolidate the new action with the earlier divorce action and application to reopen the issues of equitable distribution is barred by Rule 4:50 * * *
* * * * * * * *
Adriana Von Pein is a resident of Pennsylvania and defendants are presently residents of Connecticut. Even if Althea Piteo Von Pein had sufficient contacts with New Jersey to give New Jersey in personam jurisdiction over her, any judgment obtained by Adriana Von Pein would have to be satisfied from assets outside the jurisdiction of New Jersey. The issues could better be addressed by the Federal District Court in Connecticut where litigation is presently pending between the parties or the Connecticut courts where the parties and presumably other witnesses and evidence are more readily available[4]. New Jersey no longer has any interest in the parties or their causes of action and the Court finds is a forum non conveniens.

For these reasons, the Court will reconsider its prior decision to consolidate these actions when it was unaware that the application was opposed and did not know of the history of this litigation and will deny the original application. The Court on its own motion will dismiss the [new action] for all of the aforementioned reasons.
Defendant appeals from the order of dismissal as well as the denial of the consolidation. We are satisfied that both orders were error and should be reversed.
Defendant's effort to trace the marital assets into the Connecticut home are part and parcel of the divorce litigation. Proper and complete disposition of the matter requires that Piteo-Von Pein be a party to the action. The filing of the separate action and consolidation fully accomplish that need. The two actions are factually inseparable and, given the existence of the divorce judgment, can only be fully examined in this jurisdiction as part of the reexamination of the equitable jurisdiction question. Although none of the parties presently reside in New Jersey, their residences are not far removed from there. More importantly a majority of the transactions engaged in by both plaintiff and *19 Piteo-Von Pein took place in New Jersey and an important part of the proofs, i.e. evidence of the Merrill Lynch accounts, come from a Merrill Lynch employee who is present in New Jersey. Moreover, as defendant properly argues, the action against plaintiff and Piteo-Von Pein directly involves the integrity of the New Jersey divorce proceeding and the judgment which stemmed from it. To paraphrase the Maine Supreme Court in Bagley v. Bagley, 415 A.2d 1080 (Me. 1980) it would be inconceivable that our courts under any circumstances should step aside to let a court of some other state decide whether the New Jersey judgment was in error. Id. at 1082.

(d) The award of legal fees.

On appeal defendant contends:
The lower court erred by awarding only $200,000 in counsel fees to ex-wife's attorneys where work was necessarily done and occasioned by ex-husbands gross fraud and flouting of court orders.
Defendant sought attorney's fees of 386,163.83. In the oral opinion of April 22, 1992 in which $200,000 in counsel fees was awarded,[5] the fifth judge noted that defendant's attorneys had furnished some inch and a half of certifications. He found that "the preparation that was done in this case on behalf of the defendant was exhaustive  it was detailed and it was documented" and all the work had been done in good faith. He found the time records credible. He noted that
There is no doubt that the time and effort expended was totally out of proportion and far more than should have been necessary to resolve the issues in this case.
but
There is also no doubt that it was precipitated by the plaintiff's default, his evasiveness, his concealment and his outright lies. He not only failed to furnish information, but also knowingly misstated the facts.
It wouldn't be accurate to characterize his attitude as being uncooperative in discovery. Obstructionist would be more like it.
In awarding counsel fees, it is not my intent to punish the plaintiff, but he cannot escape the financial consequences of his purpose to unreasonably and [corruptly] undermine the legal processes. And there isn't any doubt in my mind that there is *20 a pattern of this all the way through. There is a pattern to hide assets. There is a pattern to hide income, to put the house in his current wife's name, to have the account in the bank in his current wife's name, have his income funneled through accounts in his current wife's name  all of it to evade  I believe without a doubt  all of it to evade his legal obligations and a fair resolution of the issues.
And he found the plaintiff acted in bad faith. However he concluded that the award should be for the reduced amount of $200,000.
Basing it on all of that, and basing it upon what I perceive to be primarily the bad faith of the plaintiff and what precipitated the whole action  his obstinance, and his concealment and his lack of candor and his actual evasiveness and misstatements during the course of discovery and trial, I believe that [plaintiff] should be responsible to pay two hundred thousand dollars of the legal fees incurred by the defendant in this case in prosecuting this action, and I enter judgment accordingly.
The award of counsel fees in a matrimonial action rests in the discretion of the court. See Williams v. Williams, 59 N.J. 229, 233, 281 A.2d 273 (1971). Ordinarily in the absence of abuse of that discretion we will not interfere.
In this case an examination of the trial judge's oral opinion discloses a concern about the Connecticut litigation and a suggestion that additional sums might become available in those proceedings. When the fifth trial judge made the award he understood the New Jersey action to impress a trust on the house had been dismissed. Since the matter will have to return to the fifth trial judge for a reexamination of the equitable distribution question, it would seem appropriate to also remand the question of attorney's fee for reexamination in the light of the fact that all the matters are to be decided in New Jersey. We express no view as to how much more, if anything, the award should be but note our agreement with the trial judge's view that the defendant's attorneys have done a superb job in piercing the fraud conspiracy and that if counsel has spent an unusually large amount of time in doing so, the plaintiff is the architect of his own problem. Finally we direct the trial judge's attention to N.J.S.A. 2A:34-23 with respect to the relevance of bad faith.

*21 IV.
The order of January 5, 1990 denying defendant's motion with respect to the institution of contempt proceedings is affirmed; the orders of December 19, 1990 and June 16, 1990 and the oral ruling of March 27, 1992 denying defendant's motions to reopen the equitable distribution issues are reversed; and the matter is remanded for a redetermination of the marital assets available for distribution and a reconsideration of the equitable distribution and for a reconsideration as to whether the $200,000 awarded as counsel fees should be increased. To the extent of the $200,000 already awarded, we affirm that order without prejudice to any increase which the trial judge might determine on the reconsideration. Finally we direct that on remand, the matter be tried by the fifth judge, Judge Hamer.
NOTES
[1] Defendant does not challenge this ruling.
[2] Fairness and economy of litigation demand this.
[3] In that opinion the fourth judge said: I also find that what the factual information that is the basis for the fraud was readily available for discovery during the trial or before the trial and there will be no excusable neglect in not finding that material prior to the trial so if it goes up on appeal I'll make a more formal decision on the case but I'm not going to reconsider it.
[4] Both courts have expressed an unwillingness to consider any matters prior to the judgment of divorce, properly deferring to the New Jersey judgment.
[5] Plaintiff has not appealed from this award.