**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2744-23

DONNA TAFRO,

    Plaintiff-Respondent,

v.

JOSEPH TAFRO,

    Defendant-Appellant.

_____

Submitted March 18, 2025 – Decided May 22, 2025

Before Judges Gooden Brown and Smith.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Sussex County, Docket No. FM-14-0067-20.

Joseph Tafro, appellant pro se.

Respondent has not filed a brief.

PER CURIAM

    After a two-day trial, pro se defendant, Joseph Tafro, appeals from a Final

Judgment of Divorce (FJOD) awarding pro se plaintiff, Donna Tafro, alimony,

child support, college expense support, and equitable distribution of certain personal property. Defendant also appeals the Family Part's denial of his motion for reconsideration. We affirm.

I.

We briefly outline the relevant facts.

The parties were married in 2005 and have two children, born in 2004 and 2010, respectively. Prior to separation, the parties lived in a home in Pequannock until 2018. The older child was fourteen years old at the time of the separation and became estranged from defendant after the separation.

Through her counsel, plaintiff filed the divorce complaint in 2019. The litigation became contentious, with extensive motion practice and numerous orders issued by Family Part judges. Plaintiff became unrepresented in 2023. That year, the parties executed a memorandum of understanding (MOU) which established custody status and a parenting plan for the younger child. Prior to trial, the parties reached agreement on custody and parenting time, consistent with the MOU terms.

A two-day trial between the unrepresented parties commenced in February 2024. Both parties testified extensively and cross-examined the other, but they

2

presented no additional witnesses. On the second day of trial, defendant intimated to the court that he did not seek any equitable distribution.

> [THE COURT:] So, you're not looking for any distribution?
>
> [DEFENDANT:] I don't think there is any. What . . . are we going to get?

After the trial, the Family Part judge entered an order granting the FJOD and awarding plaintiff alimony, child, and college expense support. The court also awarded equitable distribution of personal property and credited defendant for his payment of certain joint tax liabilities against his college expense obligation. The trial court made findings in a written statement of reasons.

The trial court first found defendant's trial testimony equivalent to a waiver of his equitable distribution claim and determined defendant "was not seeking any [e]quitable [d]istribution," although the court noted that defendant sought certain personal property which remained in the marital residence. The court ordered certain equitable distribution relief exclusively for the personal property, setting a schedule for the parties to inventory, divide, and then distribute it.

The court next turned to alimony and made detailed findings, including but not limited to: the parties' current needs; their marital lifestyle; the older

3 <span>A-2744-23</span>

child's college costs and the parties' respective ability to pay them; plaintiff's monthly expenses; and defendant's expenses, including shelter. The court found defendant's live-in partner paid for many of his expenses, including a substantial portion of their housing expenses. The court also found not credible defendant's testimony about the parties' debt acquired during the marriage. The court found further discrepancies between defendant's testimony and his case information statement. The court then used these findings to establish the prospective alimony obligation, factoring in child support and the parties' MOU.

Moving to income determination, the trial court found the record showed plaintiff made about $54,362 in gross wages between two jobs in 2023. Using defendant's testimony and documents introduced at trial, the court next found defendant made about $126,000 in 2023.

Concerning the parties' older child's college expenses, the court applied the credible facts supported in the record to the Newburgh[1] factors. The court determined defendant should pay fifty-eight percent of the older child's college expenses, subject to credit for his joint tax liability payments. The court rejected defendant's Gac[2] argument, finding defendant contributed "greatly" to the

---

[1] Newburgh v. Arrigo, 88 N.J. 529, 545 (1982).

[2] Gac v. Gac, 186 N.J. 535 (2006).

strained relationship between him and the older child. The court concluded that his strained relationship argument did not outweigh its findings on the remaining Newburgh factors, which favored an award of college expense support.

Defendant sought reconsideration, asking the court to: reconsider the alimony award; deem correct the expenses he claimed in his CIS; and re-run a means test. Defendant submitted additional documents showing he made payments to his live-in partner for shelter expenses. The trial court denied reconsideration, finding defendant's "new" evidence could have been adduced at trial.

Defendant appealed, contending the trial court erred by: failing to properly apply N.J.S.A. 2A:34-23.1 in determining equitable distribution; failing to properly apply Newburgh and Gac in its college expense analysis; impermissibly permitting certain testimony of plaintiff into evidence; and by failing to recuse itself while showing bias during the proceedings.

## II.

Our scope of review of a Family Part order is limited. We owe substantial deference to the Family Part's findings of fact because of that court's special expertise in family matters. K.D. v. A.S., 462 N.J. Super. 619, 633 (App. Div. 2020) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)). Although we owe no

deference to the trial court's legal conclusions, C.R. v. M.T., 248 N.J. 428, 440 (2021), we will not interfere with "the factual findings and legal conclusions that flow from them unless convinced they are 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice,'" Satz v. Satz, 476 N.J. Super. 536, 549 (App. Div. 2023) (quoting Ricci v. Ricci, 448 N.J. Super. 546, 564 (App. Div. 2017)), or we "determine the [trial] court has palpably abused its discretion," Parish v. Parish, 412 N.J. Super. 39, 47 (App. Div. 2010) (omission in original) (quoting Cesare, 154 N.J. at 412).

Appeals concerning the valuation and/or equitable distribution of marital assets use the same standard of review, whether the trial judge's "findings are supported by adequate[,] credible evidence in the record." Addesa v. Addesa, 392 N.J. Super. 58, 75 (App. Div. 2007) (citing Borodinsky v. Borodinsky, 162 N.J. Super. 437, 443-44 (App. Div. 1978)). Where the appeal issue concerns the manner in which allocation of the eligible assets is made, "[we] may determine whether the amount and manner of the award constituted an abuse of the trial judge's discretion." Borodinsky, 162 N.J. Super. at 444; see also Slutsky v. Slutsky, 451 N.J. Super. 332, 355 (App. Div. 2017) ("A family part judge has broad discretion in . . . allocating assets subject to equitable distribution."

(omission in original) (quoting Clark v. Clark, 429 N.J. Super. 61, 71 (App. Div. 2012))).

A trial court has broad discretion in awarding alimony so long as it considers our jurisprudence and the factors set forth in N.J.S.A. 2A:34-23(b). See Gnall v. Gnall, 222 N.J. 414, 429-31 (2015); J.E.V. v. K.V., 426 N.J. Super. 475, 484-85 (App. Div. 2012). Failure to consider all the factors is grounds for reversal. Gnall, 222 N.J. at 433-35. An award should also be set aside if it is "[un]supported by substantial credible evidence" in the record. Lombardi v. Lombardi, 447 N.J. Super. 26, 33 (App. Div. 2016).

We review the award of child support for an abuse of discretion. Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 587 (App. Div. 2016). Judges must apply the Child Support Guidelines for combined family incomes up to $187,200. Gormley v. Gormley, 462 N.J. Super. 433, 450 (App. Div. 2019); see Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A, ¶ 20, www.gannlaw.com (2025). If an award is consistent with controlling law, reversal is only warranted where "the trial judge's findings are 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Gormley, 462 N.J. Super. at 442 (quoting Rova Farms Resort, Inc.

v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)); Catabran, 445 N.J. Super. at 587.

We also apply an abuse of discretion standard on motions for disqualification or recusal. Amato v. Twp. of Ocean Sch. Dist., 480 N.J. Super. 239, 245 (2024). Where no motion for recusal is made, we review for plain error. State v. Medina, 349 N.J. Super. 108, 129 (App. Div. 2002). Under that standard, courts "disregard any alleged error 'unless it is of such . . . nature as to have been clearly capable of producing an unjust result.'" N.J. Div. of Child Prot. & Permanency v. C.R.A.G., 479 N.J. Super. 504, 529 (App. Div. 2024) (quoting R. 2:10-2).

Lastly, we review a court's order on reconsideration for abuse of discretion. AC Ocean Walk, LLC v. Blue Ocean Waters, LLC, 478 N.J. Super. 515, 523 (App. Div. 2024) (citing Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996)).

## III.

## A.

We first address defendant's bias claims.

Defendant argues the court should have recused itself from the trial since it had "direct knowledge of the disputed facts." Defendant alleges this "direct

knowledge" came from the court's role mediating between the unrepresented parties during a March 14, 2023 settlement conference. Defendant also argues that the proceedings were unfair, as many of the court's actions demonstrated implicit bias. Specifically, defendant takes issue with the court: objecting on plaintiff's behalf during trial; "suggesting" possible expenses for plaintiff to claim; and inquiring as to defendant's history of infidelity and child abandonment. We are unconvinced.

The fair administration of justice is embodied in the Code of Judicial Conduct. Canon 1 of the Code of Judicial Conduct articulates that "[a]n independent and impartial judiciary is indispensable to justice." Canon 2 directs that "[a] judge shall avoid impropriety and the appearance of impropriety." To that effect, Rule 1:12-1 provides in relevant part that the "judge of any court shall be disqualified on the court's own motion and shall not sit in any matter . . . when there is any other reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so."

Similarly, Rule 3.17(B) of the Code of Judicial Conduct provides, in pertinent part:

> Judges shall disqualify themselves in proceedings in which their impartiality or the appearance of their

9 <span>A-2744-23</span>

impartiality might reasonably be questioned, including but not limited to the following:

> . . . Judges shall disqualify themselves if they have a personal bias or prejudice toward a party or a party's lawyer or have personal knowledge of disputed evidentiary facts involved in the proceeding.

The disqualification analysis necessarily focuses on knowledge gained, opinions stated, and relationships formed "outside of the [judge's] role as a judge." Medina, 349 N.J. Super. at 129 (quoting State v. Marshall, 148 N.J. 89, 96 (1997)). Indeed:

> exposure to inadmissible evidence in the course of pretrial proceedings generally does not require disqualification of the judge even where the judge is to serve as the factfinder. "A judge sitting as the factfinder is certainly capable of sorting through admissible and inadmissible evidence without resultant detriment to the decision[-]making process . . . ." State v. Kern, 325 N.J. Super. 435, 444 (App. Div. 1999). Trained judges have the ability "to exclude from their consideration irrelevant or improper evidence and materials which have come to their attention." State v. Kunz, 55 N.J. 128, 145 (1969).
>
> [Id. at 130 (omission in original) (citation reformatted).]

The record shows defendant never moved for recusal. See id. at 129 ("[A] motion for recusal must be made to the judge sought to be disqualified[.]"

10

(quoting Magill v. Casel, 238 N.J. Super. 57, 63 (App. Div. 1990))). Hence, we review this claim for plain error. R. 2:10-2.

Any information or allegations the trial court learned as a result of mediating the parties' settlement conference cannot be characterized as personal knowledge. The conference was simply a pretrial proceeding in the pending litigation. The court was more than capable of limiting its ultimate findings of fact and conclusions of law to the evidence presented at trial, and we discern nothing in the record that reflects otherwise. We conclude that the trial court did not commit plain error when it presided over both the settlement conference and the trial.

Turning to defendant's claims of bias during trial, we note "judges must avoid acting in a biased way or in a manner that may be perceived as partial." DeNike v. Cupo, 196 N.J. 502, 514 (2008) (emphasis omitted). However, "bias is not established by the fact that a litigant is disappointed in a court's ruling on an issue," and the litigant's "belief that the proceedings were unfair must be objectively reasonable." Marshall, 148 N.J. at 186, 279.

Defendant asserts the court favored plaintiff through its questions and evidentiary decisions.[3] We find these claims meritless.

We find no support in the record to conclude that the court impermissibly introduced defendant's alleged prior infidelity and child from another relationship at trial. The court first raised the topic when plaintiff decided, at trial, to proceed with a no-fault divorce instead of a fault-based course of action. Defendant then opened the door to the now-disputed topics through his introduction of text message exchanges between him and the parties' older child.

The trial court properly considered evidence relevant to its support determinations. See N.J.S.A. 2A:34-23(a)(3), (a)(8), (b)(1), (b)(14); Newburgh, 88 N.J. at 545; Gac, 186 N.J. at 544. However, the court improperly questioned defendant regarding a 1996 restraining order involving his child from a former relationship and that child's mother. The court's line of questioning was not relevant to the issues at trial. That said, defendant failed to object to the court's improper questions, answering them instead.

---

[3] Defendant's citation to Rule 3.6 of the Code of Judicial Conduct is misplaced, as this rule mandates that a court "shall be impartial and shall not discriminate" on the basis of numerous identities and traits, including "race, creed, color, sex, gender identity or expression, religion[,] . . . [and] national origin." Defendant does not assert the trial court discriminated against him on the basis of a trait, but rather that the court favored plaintiff through its procedural and evidentiary decisions and related actions.

The record shows the court did not incorporate the improper and irrelevant testimony into its statement of reasons. Because this was a no-fault dissolution, consideration of defendant's fault, other than in connection to his acrimonious relationship with the older child or the relative economic positions of the parties, would be error.[4] See Chalmers v. Chalmers, 65 N.J. 186, 193 (1974) ("The concept of fault is not relevant to [equitable] distribution . . . ."); Mani v. Mani, 183 N.J. 70, 90-91 (2005) (noting that only economic fault, or depletion of family resources, may be considered in alimony awards). The ample record supports our conclusion that the trial court grounded its findings on competent and relevant evidence supported by credible facts in the record. Defendant has failed to show the trial court was biased against him.

Defendant next claims the trial court erred by making sua sponte objections during his cross-examination of plaintiff. We disagree.

Trial judges have considerable latitude in determining whether to admit evidence, State v. Feaster, 156 N.J. 1, 82 (1998), and in controlling witness questioning to effectively ascertain the truth, see N.J.R.E. 611; State v. R.Y.,

_____

[4] Defendant challenges the court's finding that defendant admitted "he had cheated on his first wife by impregnating plaintiff," but this was part of the college expenses analysis, not the alimony analysis. The court found defendant's denials to his older child about cheating on plaintiff not credible. See Gac, 186 N.J. at 544.

242 N.J. 48, 72 (2020) ("[T]rial judges are vested with broad discretion over the mode of interrogation . . . ." (quoting State v. Bueso, 225 N.J. 193, 206 (2016))).

The need for the judge to exercise discretion is magnified where the parties are pro se litigants, as the "court system is obliged to protect the procedural rights of all litigants." Rubin v. Rubin, 188 N.J. Super. 155, 159 (App. Div. 1982). Indeed, "[a] judge may make reasonable accommodations to ensure pro se litigants the opportunity to have their matters fairly heard." Code of Jud. Conduct r. 3.7 cmt (italicization omitted).

The trial court appropriately managed its courtroom and properly performed its role by guiding both unrepresented parties concerning our Rules of Evidence. The record shows the court provided this guidance to both parties throughout the two-day trial.

We conclude the trial court did not commit plain error on the question of recusal.

B.

Defendant next contends the trial court committed error by not admitting into evidence the martial home appraisal. He argues that barring the report led to the court's failure to consider that plaintiff "drained substantial equity" from the home.

When determining if an equitable distribution of marital assets will be made, a court

> must first decide what specific property of each spouse is eligible for distribution. Secondly, [the judge] must determine its value for purposes of such distribution. Thirdly, [the judge] must decide how such allocation can most equitably be made. As to the first two of these steps [the judge] must receive, and must insist upon having, the full cooperation of the litigants. Counsel for both [parties] should, in advance of such a hearing, see that their clients have carefully reviewed all eligible property interests they possess and that they come to court prepared to testify fully and accurately with respect thereto.
>
> [Rothman v. Rothman, 65 N.J. 219, 232-33 (1974) (footnote omitted).]

See also N.J.S.A. 2A:34-23.1 ("[T]he court shall make specific findings of fact on the evidence relative to all issues pertaining to asset eligibility or ineligibility, asset valuation, and equitable distribution . . . .").

Defendant's arguments are belied by the record. The court questioned plaintiff regarding equitable distribution:

> [THE COURT:] Okay. We're on to equitable distribution. So, you have a marital residence that's going to be lost to foreclosure eventually[,] right?
>
> [PLAINTIFF:] Correct.
>
>     . . . .

[THE COURT:]  So, what is there to be distributed in equitable distribution?

[PLAINTIFF:]  I think [defendant is] looking for household items.

[THE COURT:]  Oh.  Are you objecting to that?

[PLAINTIFF:]  No.  He can give me a list of the items he'd like.

The record shows that the only marital property considered for distribution was tangible personal property in the home that was being foreclosed upon.

[THE COURT:]  Equitable distribution we haven't covered yet.  Income available to each party through investment of assets, and you really basically have told me there are none[,] right?

[DEFENDANT:]  Exactly, your honor.

    . . . .

[DEFENDANT:]  . . . So, . . . I believe the equitable distribution when this is over . . . is zero.  And the reason I believe that is because there was lost equity in the house[.] . . . I [could] play and . . . say, hey, she owes me $50,000 in equity because she squatted in the house and never paid a payment and utilized my equity, taking payments from me, sitting there rent[-]free for five years, . . . [and also for] [t]he joint tax bills, . . . [and] all the things that she owes me half on. . . .

[THE COURT:]  So, you're not looking for any distribution?

16

[DEFENDANT:]  I don't think there is any. What . . .
are we going to get?

. . . .

[PLAINTIFF:]  There's none.

. . . .

[THE COURT:]  So, . . . all we're really arguing about
is alimony and college expenses . . . .

The record is clear.  The parties represented themselves at trial.  They waived equitable distribution issues, other than personal property.  Therefore, the court correctly found no need to decide equitable distribution except for the personal property issue.

While "the contribution of each party to the . . . depreciation . . . in the amount or value of the marital property" is a valid consideration under N.J.S.A. 2A:34-23.1(i), defendant waived his depreciation claims.  He also did not raise the question on reconsideration.  Were we to consider defendant's depreciation argument properly raised, the record shows he presented no evidence to support it.

The trial court correctly relied upon the parties' representations that the marital home had no significant value at the time of trial.  The court's corresponding finding tracked the parties' testimony, and we discern no error.

17

See Von Pein v. Von Pein, 268 N.J. Super. 7, 10-11, 15-16 (App. Div. 1993) (finding no issue with trial judge affording no value to house in foreclosure for equitable distribution purposes).

Defendant also posits that the court committed error by affording him an unrequested benefit, the crediting of his tax payments against his college expense obligation. We find this argument meritless, as the trial court found that permitting the parties to completely waive equitable distribution would be improper on this record. With its comprehensive understanding of the record, the court properly used its equitable powers to credit defendant's unilateral payment of joint tax liabilities against his college expense obligation. Thieme v. Aucoin-Thieme, 227 N.J. 269, 287 (2016) ("The Family Part is a court of equity." (quoting Randazzo v. Randazzo, 184 N.J. 101, 113 (2005))).

## C.

Defendant next challenges the court's findings concerning the alimony award. He contends the court erred by: miscalculating plaintiff's monthly expenses; improperly finding that his live-in partner "subsidized [his] shelter cost"; and violating his due process rights.

Trial courts must consider the factors outlined in N.J.S.A. 2A:34-23(b) when awarding alimony. "[T]he goal of a proper alimony award is to assist the

supported spouse in achieving a lifestyle that is reasonably comparable to the one enjoyed while living with the supporting spouse during the marriage." Tannen v. Tannen, 416 N.J. Super. 248, 260 (App. Div. 2010) (alteration in original) (quoting Steneken v. Steneken, 183 N.J. 290, 299 (2005)).

In calculating the marital lifestyle, the court first noted that plaintiff filed two CISs, one dated May 26, 2021,[5] and the other dated January 25, 2024. Each CIS reported a different marital lifestyle cost. Using its fact-finding authority, the court reconciled the differences by questioning plaintiff.

Defendant testified that the parties were living beyond their means. The court found defendant's testimony on martial lifestyle not credible, particularly on the question of debt service. See S.W. v. G.M., 462 N.J. Super. 522, 532 (App. Div. 2020) ("In many cases, parties live above their means or spend their earnings and assets to meet expenses. In such instances, a finding of the marital lifestyle must consider what the parties spent during the marriage . . . .").

The record shows there was sufficient evidence to support the court's determination that the "lifestyle for the family of four was closer to the number presented by [plaintiff] without quite reaching her number," and we discern no error as to the court's findings on marital lifestyle.

---

[5] The statement is dated May 26, 2021, but plaintiff signed it on May 27, 2021.

Turning to defendant's arguments about his shelter expenses, the court found his "housing costs, and probably personal expenses, are greatly, if not entirely subsidized by [defendant's live-in partner]. His shelter expenses, therefore[,] are minimum." The record shows the court relied heavily on defendant's testimony.

On direct examination defendant stated that his partner "is very successful" and "makes triple of what [he] make[s]." On cross-examination, he testified that, in 2021, McDonald paid the "entire" down payment of $90,000 for the new home they bought together. The record shows a conflict between defendant's testimony on how much he contributed to the monthly mortgage and how much he stated in his CIS that he paid each month. The record contained no documentary proof to support either amount.

Because fact finders "may draw an inference from a fact whenever it is more probable than not that the inference is true," State v. Lodzinski, 249 N.J. 116, 144 (2021) (quoting State v. Brown, 80 N.J. 587, 592 (1979)), the court was within its discretion to find there was "little question" defendant did not pay the full amount of his listed shelter expenses. We easily reach this conclusion given the discrepancy between defendant's testimony and his CIS, and the court's extant assessment of his credibility.

20

We conclude the trial court's resultant findings on defendant's shelter expenses were not an abuse of discretion.

Finally, defendant's due process argument and citation to <u>Peterson v. Peterson</u>, 374 N.J. Super. 116, 124 (App. Div. 2005), are unavailing. There we found that the issuance of a restraining order against a spouse without allowing him to present witnesses or cross-examine the opposing spouse's witnesses violated his due process rights. <u>Id.</u> at 124-25. The case is inapposite here. As a pro se litigant, defendant had a full and fair opportunity to present his case. He testified on direct, cross-examined plaintiff, and submitted documentary evidence. The court provided defendant with an opportunity to present other witnesses. Defendant now contests the court's findings, which are grounded in the very evidence the parties, including defendant, presented to court. There is no due process–related error.

Any arguments by defendant not addressed here lack sufficient merit to warrant discussion in a written opinion. <u>See</u> <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Hanley*

Clerk of the Appellate Division

21